IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAFWAT EL-DAOUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | )  Civil Action No. -4-1911 |
| | ) |
| MICHAEL CHERTOFF, Secretary, Department | ) |
| of Homeland Security, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

# OPINION and ORDER OF COURT

### SYNOPSIS

Plaintiff, a lawful permanent resident, has been awaiting a ruling from the Citizenship and Immigration Services ("CIS") on his naturalization application for almost four years. Given this delay, he asks this Court to either determine his application or remand it to the CIS for a prompt resolution. The Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's claim. I find that I do, in fact, have subject matter jurisdiction, but nevertheless elect to remand the case for further proceedings.

1

**OPINION**

Plaintiff Safwat El-Daour ("El-Daour") is a Palestinian national who became a lawful permanent resident of the United States on or about May 7, 1998. On November 8, 2001, El-Daour applied for naturalization under 8 U.S.C. § 1427 and § 1430(a). Although El-Daour was fingerprinted, was interviewed and was told that the examiner would recommend him for approval, El-Daour has yet to receive notice that his application has been adjudicated. Accordingly, he commenced this action seeking declaratory judgment of naturalization or, in the alternative, relief in mandamus.

The Defendants, Michael Chertoff, Secretary, Department of Homeland Security et. al ("the Defendants") demand dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(h)(3) for lack of subject matter jurisdiction. The Defendants reason that the Citizen and Immigration Services ("CIS") has not completed its "examination" of El-Daour's application and therefore that jurisdiction under 8 U.S.C. §1447(b) is premature. The Defendants also argue that El-Dauor cannot circumvent § 1447(b)'s limitations by seeking relief under the Administrative Procedures Act, 5 U.S.C. § 701 et. seq. ("APA") or the Mandamus Act, 28 U.S.C. § 1361.

For the reasons set forth below, I agree with El-Daour that more than one hundred twenty (120) days have expired since the date of his examination without a ruling on his application by the CIS. As such, I have jurisdiction under § 1447(b) to entertain El-Daour's complaint. Yet § 1447(b) also vests this Court with the discretion to remand the action to the CIS for further proceedings. I am not equipped, nor

qualified for that matter, to conduct a criminal background investigation of El-Daour. Congress assigned this responsibility to the Federal Bureau of Investigation ("FBI"). Accordingly, I will remand this matter to the CIS and instruct them to take action upon El-Daour's application as expeditiously as possible upon receiving the results of the FBI investigation.

## ANALYSIS

The crucial matter before me in assessing whether I have subject matter jurisdiction over El-Daour's Complaint is the meaning of the word "examination" as used in 8 U.S.C. § 1447(b). Section 1447(b) provides that:

> [i]f there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the <u>examination</u> is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b) (emphasis added). El-Daour argues that the word "examination" as used in § 1447(b) references the date upon which the CIS examiner interviews the applicant. The parties agree that more than 120 days have elapsed since the date upon which the CIS examiner interviewed El-Daour, without the issuance of a ruling on his application. Were I to accept El-Daour's reading of § 1447(b) then, I would conclude that I do in fact have the subject matter jurisdiction necessary to entertain this case.

The Defendants argue, in contrast, that the word "examination" really

connotes a process rather than a specific event. According to the Defendants, the "examination" has yet to be completed because the FBI has not tendered the results of its criminal background investigation of El-Daour. Thus, were I to conclude that the "examination" is a process not completed until the background checks are finished, then the one hundred twenty (120) day period described in § 1447(b) would not have expired and I would lack subject matter jurisdiction over El-Daour's complaint.

The Defendants' argument is premised upon a recent decision issued by the United States District Court for the Eastern District of Virginia. In Danilov v. Aguirre, 370 F. Supp.2d 441 (E.D. Va. 2005), an applicant for naturalization sought relief in district court under § 1447(b) with respect to his pending application. More than 120 days had lapsed from the date upon which he was interviewed by a CIS employee, and CIS had not ruled on the application. The defendants sought dismissal of the claim on the same basis advanced in the present litigation. Specifically, the defendants argued that the term "examination" as used in § 1447(b) referred to a process not complete until the FBI tenders the result of its background investigation. Thus, the 120 day counting period does not begin until the entire process is complete.

The district court agreed with the defendants. The district court based its conclusion on language set forth in § 1446(b). That section allows an employee designated to conduct an examination to take testimony, administer oaths, and

issue subpoenas.[1]  The court understood § 1446(b) to make "clear that an examination is not a single event, but instead is essentially a *process* the agency follows to gather information concerning the applicant." Danilov, 370 F. Supp.2d at 443 (emphasis in original).  The court also found support for its conclusion in the requirement that "the FBI complete a criminal background investigation of an applicant *before* the examination may be completed." Id. at 444, citing 8 C.F.R. § 335.2 (emphasis in original).

I do not find the Danilov decision to be persuasive for several reasons.  First, I note that the decision was issued without benefit of briefing by the plaintiff.[2]  The case appears to have presented an issue of first impression in the Fourth Circuit Court, the Danilov court does not cite to any case law as authority for its interpretation of § 1447(b) and independent research did not reveal any either.  I have had a benefit not bestowed upon the Danilov court - a response by the naturalization applicant to the defendants' argument that subject matter jurisdiction is lacking.

Second, I believe that the Danilov court misreads and / or ignores the

---

[1] Section 1446(b) provides that:
The Attorney General shall designate employees of the Service to conduct examinations upon applications for naturalization ... [and] [f]or such purposes any such employee so designated is authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any applicant for naturalization, to administer oaths, including the oath of the applicant for naturalization, and to require by subpena [sic] the attendance and testimony of witnesses, including applicant, before such employee so designated and the production of relevant books, papers, and documents, and to that end may invoke the aid of any district court of the United States... .

[2] Apparently, plaintiff had not responded within the allotted time and the court dispensed with oral argument. Id. at 442.

applicable statute and regulations. The statute itself speaks of "*the date* on which the examination is *conducted*." 8 U.S.C. § 1447(b) (emphasis added). This contemplates that the examination occurs on a particular, identifiable, date. A "process" does not occur on one particular and identifiable date. Further, even were I to accept the proposition that "examination" means "process," the result would not be that advocated by the Danilov court and the Defendants here. Section 1447(b) would, under their interpretation, allow for subject matter jurisdiction if the CIS fails to issue a decision before "the end of the 120-day period after the date on which the [process] is conducted... ." Yet the process is being "conducted" on the date the applicant files the application, on the date that the interview occurs and on the date the FBI performs the background investigation. Certainly the Danilov court and the Defendants here would reject the notion that the applicant can seek court intervention 120 days after any of those tasks are being conducted. For the Danilov court's decision and for the Defendants' position here to make sense, I would not only have to read "examination" as it is used in § 1447(b) to mean "process," but I would also have to read "conducted" as it is used in § 1447(b) to mean "completed" or "concluded." I cannot imagine that Congress was so sloppy in its lexicography.

Additionally, the Danilov court's reading of "examination" does not square with the applicable regulations. Section 335.2 is entitled "Examination of the applicant" and thus is clearly relevant to understanding the meaning of "examination" as it is used in § 1447(b). Section 335.2 reads, in relevant part:

(a) General. Subsequent to the filing of an application for naturalization, each applicant shall appear in person before a Service officer designated to conduct examinations pursuant to § 332.1 of this chapter.  The examination shall be uniform throughout the United States and shall encompass all factors relating to the applicant's eligibility for naturalization. ...

(b) Completion of criminal background checks before examination.  The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check on the applicant has been completed. ...

(c) Procedure. Prior to the beginning of the examination, the Service officer shall make known to the applicant the official capacity in which the officer is conducting the examination.  The applicant shall be questioned, under oath or affirmation, in a setting apart from the public.  Whenever necessary, the examining officer shall correct written answers in the application for naturalization to conform to the oral statements made under oath or affirmation.  The Service officer shall maintain, for the record, brief notations of the examination for naturalization.  At a minimum, the notations shall include a record of the test administered to the applicant on English literacy and basic knowledge of the history and government of the United States.  The Service officer may have a stenographic, mechanical, electronic, or videotaped transcript made, or may prepare an affidavit covering the testimony of the applicant. The questions to the applicant shall be repeated in different form and elaborated, if necessary, until the officer conducting the examination is satisfied that the applicant either fully understands the questions or is unable to understand English.  The applicant and the Service shall have the right to present such oral or documentary evidence and to conduct such cross-examination as may be required for a full and true disclosure of the facts.
...
(e) Record of examination.  At the conclusion of the

> examination, all corrections made on the applicant form and all supplemental material shall be consecutively numbered and listed in the space provided .....

8 C.F.R. § 335.2. Section 335.2 can only be understood as equating the "examination" with the "interview" conducted by the Service officer.

Moreover, section 335.2(b) states that the full criminal background check must be completed <u>before</u> the examination is conducted, not, as the <u>Danilov</u> court represents, that the investigation must be conducted before the examination can be <u>completed</u>. <u>See</u> <u>Danilov</u>, 370 F. Supp.2d at 444. Clearly, then, the investigation and the examination are separate and distinct things. This is also confirmed by the fact that § 335.1 of the regulations deals with an investigation by CIS whereas § 335.2 of the regulations deals with the examination. If the investigation were really part of the examination, one would expect to find discussion of the same under the regulation dealing with examination.

Finally, the <u>Danilov</u> court's interpretation of "examination" and that advocated by the Defendants here, is contrary to that given by other courts. <u>See</u> <u>Sweiliem v. U.S. Citizenship and Immigration Services</u>, Civ. No. 5-125, 2005 WL 1123582 (N.D. Ohio May 10, 2005) (finding that an applicant for naturalization, who had sought court relief under § 1447(b) because of a failure to issue a decision before the expiration of 120 days after the examination, was "examined for citizenship" for purposes of § 1447(b) on the date of the interview); <u>Ogunfuye v. Acosta</u>, Civ. No. 5-551, 2005 WL 1607034 (S.D. Tex. July 1, 2005) (finding, where plaintiff claimed that more than 120 days had elapsed after her date of examination before the CIS without an

adjudication on her eligibility, that plaintiff could not prove that her "examination" occurred because she was arrested upon arriving for her interview and was never in fact interviewed) and Castracani v. Chertoff, Civ. No. 4-1127, 2005 WL 1566443 (D. D.C. July 5, 2005) (finding that, for purposes of assessing whether 120 days have lapsed since the date of the examination without a resolution on an application, the plaintiff had been "examined" on March 25, 2003 - the date of his appearance for the interview with the CIS agent). I acknowledge that these decisions might not be squarely on point. Nevertheless, they are consistent in their reading of the word "examination" as used in § 1447(b) to mean the interview. I find them persuasive for that reason.

## CONCLUSION

Here, as in Danilov and as likely in many other cases, the CIS simply failed to follow its own procedure. Had the CIS complied with § 335.2(b) and completed the criminal background checks before conducting the examination (interview), El-Daour would not be waiting month after month after having the interview for a ruling on his application. I certainly do not intend to chastize the CIS or the FBI for the lengthy processing of naturalization applications. As the court noted in Alkenani v. Barrows, 356 F. Supp.2d 652, 657 (N.D. Tx. 2005), "unfortunately, delays of this nature are inevitable and becoming more frequent in light of heightened security concerns in the post-911 world."

That said, while I am confident that I have subject matter jurisdiction over El-Daour's application, I must remand the action to the CIS. Section 1447(b) permits a

court to "remand the matter, with appropriate instructions, to the Service to determine the matter." Certainly, I sympathize with El-Daour's plight. He "is understandably anxious to complete the naturalization process so he can fully enjoy the benefits of United States citizenship." <u>Alkenani</u>, 356 F. Supp.2d at 657. Yet the very reason that the CIS did not process El-Daour's application within 120 days of his examination prevents me from deciding his application. The FBI has not yet completed the criminal background check. This is a vital piece of information. A court is not equipped to conduct such an investigation. I do not have the resources at my disposal to determine whether El-Daour presents a risk to national security or to public safety.

Consequently, I must remand the action to the CIS for a prompt resolution once the background check has been completed.

<u>* * * * * * * * * * * * * * * * * * * *</u>

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAFWAT EL-DAOUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No.  -4-1911 |
| MICHAEL CHERTOFF, Secretary, Department of Homeland Security, et al., | ) ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## **ORDER OF COURT**

AND NOW, this **26th** day of August, 2005, after careful consideration, and for the reasons set forth in the accompanying Opinion, it is ORDERED that the Motion to Dismiss (Docket No. 15) is denied in part and granted in part. It is denied insofar as it sought the dismissal of the action under Rule 12(h) for lack of subject matter jurisdiction. It is granted, however, insofar as it sought alternative relief, a remand of this action to the CIS under 8 U.S.C. § 1447(b) for a prompt resolution of this matter upon receipt of the results of the FBI's criminal background check.

BY THE COURT:


/S/ Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge